## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**THOMAS MACKPERSON, JR.,**

     **Plaintiff,**

**vs.**                          **Case No.  1:12-CV-196-CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

     **Defendant.**

_____/

### MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to the undersigned United States

Magistrate Judge upon consent of the parties and reference by District Judge

Maurice M. Paul.  Doc. 13.  *See* Fed. R. Civ. P. 73; 28 U.S.C. § 636(c).  After careful

consideration of the entire Record, the Court affirms the decision of the Commissioner.

## I.  Procedural History of the Case

On June 30, 2008, Plaintiff, Thomas Mackperson, Jr., filed a Title II application

for a period of disability and Disability Insurance Benefits and a Title XVI application for

Supplemental Security Income, alleging disability beginning May 12, 2008.  R. 18, 155-

62, 228.  (Citations to the Record shall be by the symbol "R." followed by a page

number that appears in the lower right corner.)  Plaintiff's date last insured, or the date

by which his disability must have commenced in order to receive benefits under Title II,

is March 30, 2013.  R. 18.

Plaintiff's applications were denied initially on October 14, 2008, and upon reconsideration on May 1, 2009. R. 18, 102-09, 114-19. On June 12, 2009, Plaintiff filed a request for hearing. R. 18, 120. On September 29, 2010, Plaintiff appeared and testified at a hearing conducted by Administrative Law Judge (ALJ) Philemina M. Jones in Ocala, Florida. R. 18, 35-97. Dennis M. O'Connor, an impartial vocational expert, testified during the hearing. R. 18, 79-96. Plaintiff was represented by Marcia Green, a paralegal representative from Three Rivers Legal Services. R. 18, 37, 128. Ms. Green provided the ALJ with a Pre-Hearing Memorandum. R. 274-78. Ms. Green withdrew as Plaintiff's representative on January 5, 2011, R. 5, and Plaintiff was thereafter represented by Pamela C. Dunmore, a non-attorney representative, and N. Albert Bacharach, Jr., an attorney. R. 6-8.

On December 14, 2010, the ALJ issued a decision denying Plaintiff's applications for benefits. R. 28. On January 11, 2011, Plaintiff filed a request for review and submitted additional evidence, R. 1-2, 14, which was denied by the Appeals Council on June 29, 2012. R. 1-4.

On August 28, 2012, Plaintiff filed a complaint with the United States District Court seeking review of the ALJ's decision that is the final decision of the Commissioner. Doc. 1. The parties filed memoranda of law, docs. 16 and 19, and those have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1.  Plaintiff "meets the insured status requirements of the Social Security Act through March 30, 2013." R. 20.

2. Plaintiff has not engaged "in substantial gainful activity since May 12, 2008, the alleged onset date." R. 20.

3. Plaintiff has several "severe impairments: headaches, right shoulder pain, back pain with radiculopathy, annular tear and fissure at 15-sl level, obesity, an affective mood disorder, a somatoform disorder and an anxiety disorder." R. 20. Plaintiff's "impairments cause more than minimal limitations in the claimant's ability to substantial gainful activity." R. 20.

4. Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 20.

5. Plaintiff "has the residual functional capacity [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with additional limitations. The claimant can work with a sit/stand option; he is limited with pushing and pulling with his upper extremities; he can perform occasional climbing, balancing, stooping, kneeling, crouching and crawling; he is limited reaching in all directions and is limited to occasional overhead use of his right upper extremity. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards. The claimant is also limited to performing routine tasks and can maintain adequate work relations but may distract other[s] at times. His output by [sic] be more variable than the average employee and he should not work with the general public or in close proximity to others." R. 22.

6. Plaintiff "is unable to perform any past relevant work" as an order picker, small products packager, census clerk, janitor, dietary aide, house parent, small products packager, and psychiatric aide. R. 26.

7. Plaintiff "was born on March 24, 1970 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date" and Plaintiff "has at least a high school education and is able to communicate in English." R. 27.

8. "Considering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" such as a nut sorter and dowel inspector that are unskilled and sedentary jobs. R. 27, 84, 94-95.

9. Plaintiff was not under a disability at any time from May 12, 2008, through the date of the ALJ's decision. R. 28.

### III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[1]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age,

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status.  *See* 42 U.S.C. § 423(a)(1)(A) and (d); Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  Consideration

is given to the assessment of the claimant's RFC and the claimant's past relevant work.

If the claimant can still do past relevant work, there will be a finding that the claimant is

not disabled.  If the claimant carries this burden, however, the burden shifts to the

Commissioner at step five to establish that despite the claimant's impairments, the

claimant is able to perform other work in the national economy in light of the claimant's

RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel,

190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen,

786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

If the Commissioner carries this burden, the claimant must prove that he or she cannot

perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987).

## IV.  Evidence from the Administrative Hearing

### A.  Plaintiff's hearing testimony and medical evidence

Plaintiff does not disagree with the ALJ's factual recitations and, as a result, they

are incorporated herein.  Doc. 16.  Rather, Plaintiff argues only that the ALJ erred in

rejecting Plaintiff's claim of pain.  *Id.* at 28-32.[2]

The ALJ summarized Plaintiff's hearing testimony:

The claimant testified that he was no longer capable of engaging in substantial
gainful activity due to severe symptoms including headaches, right shoulder pain
with radiculopathy, an annular tear and fissure, obesity, anxiety, depression and
a somatoform disorder.  The claimant testified that he was unable to use his

---

[2]  The ALJ found that Plaintiff did not have an impairment or combination of
impairments that met or medically equaled one of the listed impairments.  R. 20.  In
making this determination, the ALJ considered several listings.  R. 21.  The ALJ also
considered and found that Plaintiff had *mild* restrictions in daily living and *moderate*
difficulties in social functioning and with regard to concentration, persistence or pace
and *no* episodes of decompensation, which have been of extended duration.  R. 21-22.

bilateral arm to lift, grasp and hold objects because pain in his right shoulder radiates into his arm causing numbness and tingling. He also testified that his [sic] interferes with his ability to perform various household chores. As for his bilateral legs, the claimant stated that he was unable to stand or walk longer than 45 minutes because severe spinal pain radiated into his legs. He testified that he required the assistance of a cane for ambulation. In addition, the claimant testified that he was diagnosed with asthma and that walking caused severe shortness of breath and respiratory distress. Regarding his ability to sit, the claimant testified that he was capable of sitting for 30 to 40 minutes; however, he required a break to get up and move around before he was able to sit again.

R. 23; *see* R. 38-78, 82, 85-86 (Plaintiff's hearing testimony).

Immediately thereafter, the ALJ concluded, using boilerplate language, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 23. (The ALJ found that Plaintiff had the RFC to perform sedentary work with several exceptions, *see supra* at 3. R. 22.)

The ALJ referred to the Eleventh Circuit standard for assessing a claimant's subjective complaints of pain and then summarized the medical evidence and other evidence. R. 23. (Plaintiff does not take issue with the standard used by the ALJ. Rather, Plaintiff argues that the ALJ erred in applying the standard in this case. Doc. 16 at 28-33.)

According to the record, the claimant's medial history is significant for complications associated with back injury. He underwent a consultative examination on August 30, 2008, by Dr. Eftim Adhami. The claimant reported burning muscle spasms in his left thigh, lower abdomen and left groin area, right shoulder and lower abdomen. Dr. Adhami noted that the claimant's bilateral straight leg test was normal, his muscle strength was normal even after repetitive movements and there was no atrophy or abnormal movements like spasticity, rigidity, or tremor. The claimant was capable of picking up small objects and was capable of buttoning his clothes. There was no sign of inflammation or fluid

despite reports of pain. As for his gait, Dr. Adhami observed that the claimant had full range of motion of all joints, his walk was normal, he was capable of walking on his toes and heels and his tandem walk was normal. Dr. Adhami concluded that the claimant's complaints of thigh and groin pain were of unknown origin and his right shoulder pain was without objective medical findings (Exhibit 3F).

On September 30, 2008, the claimant presented to the emergency room with complaints of left foot pain, however, an x-ray of his foot was negative (Exhibit 6F). Subsequently, on September 17, 2008, the claimant underwent another x-ray of his left foot that failed to show a fracture, dislocation or any other medical reason for his alleged pain (Exhibit 12F/4).

The claimant underwent a computed tomography scan (CT) of the lumbar spine dated March 5, 2009, that revealed a moderate sized posterior disc protrusion at the L4-L5 level, which indents the ventral thecal sac but did not significantly narrow the central canal. There was also mild bilateral degenerative facet changes and mild to moderate bilateral neural foraminal narrowing (Exhibit 12F). However, on July 20, 2009, Dr. Oscar Depaz noted that the claimant's motor strength with his upper and lower extremities were good and his sensory abilities were intact. His reflexes were normal and his gait was normal (Exhibit 22F/13).

On May 10, 2010, the claimant underwent a computed tomography scan (CT) of the cervical spine that revealed a moderate sized disc osteophyte complex with unconvertebral hypertrophy at C6-C7 on the right causing impression upon the exiting right C7 nerve root, and a small focal disc osteophyte complex on the left at C5-C6 causing impression upon the exiting left C6 nerve root (Exhibit 25F).

However, Dr. Campbell, [sic] stated that although the claimant has problems with lower extremity pain and dysfunction in addition to radiculopathy symptoms and his medical history is significant for bulging disks and arthritic changes, there is nothing noted sufficiently severe to require surgical decompression (Exhibit 13F and 1F). In addition, nerve conduction results show were normal with no evidence of positive sharp waves, fibrillation potentials, or repetitive discharges. Dr. Depaz reviewed these findings and stated that the only abnormal findings were possible left L5 root dysfunction (Exhibit 22F/9).

The undersigned concludes that the claimant has standing and walking limitations, but the evidence does not support an inability to perform the ambulation needed for a limited range of light work. Dr. Depaz noted that the claimant's gait was normal and he was walking without assistance or an assistive device (Exhibit 22F). Dr. Adhami noted that the claimant retained full range of motion and normal gait (Exhibit 3F). As for his allegations that he is unable to use his upper extremities because his shoulder pain radiates into his arm causing numbness and tingling, X-rays of the claimant's right shoulder failed to show any abnormalities or a medical reason for his pain (Exhibit 6F/8).

As for the claimant's headaches, there is evidence of treatment for headaches with Tylenol. In addition, the claimant stated that his headaches were related to stress and that they occurred only intermittently (Exhibit 30/7). The medical evidence of record does not contain evidence to show frequent emergency room treatments for headaches nor is there sufficient medical records to document functional limitations. Therefore, the undersigned finds that the testimony concerning the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning are only partially credible.

The claimant is also obese. There are no Listing criteria in Appendix 1 specific to the evaluation of *obesity* impairments. However, SSR 02-1p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity. Obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand, thus imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit all individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. The undersigned has specifically considered whether the claimant's obesity might, by itself, be equivalent in severity to a listed condition, and has thought about whether it could elevate the other impairments to listing-level significance. There is no evidence that either of these alternatives applies. In July 2009, the claimant was 73 inches tall and weighed 254 pounds (Exhibit 22F) Under the National Institutes of Health criteria, this translates to a Body Mass Index (BMI) of 33.5, which is obese (Clinical Guidelines on the Identification, Evaluation and Treatment of Overweight and Obesity in Adults, NIH No. 98-4083). The additional limitations imposed by the claimant's obesity have been considered in the residual functional capacity outlined in this decision.

In summary, while it is reasonable to conclude that the claimant should have some pain and or limitations because of the effects of his back issues and upper extremity issues, the undersigned finds that the evidence as a whole does not substantiate any reasonable medical basis for such debilitating pain, as described by the claimant. The claimant lives alone and is able to do his own cooking, some cleaning and is able to bath and dress himself. Consequently, the undersigned finds that the claimant's pain would not preclude all work activity; however, giving the claimant's testimony the benefit of a doubt, postural limitations have been included in the above residual functional capacity to accommodate those allegations. As for his allegation that asthma caused severe shortness of breath, the medical evidence of record shows he uses an inhaler to control his asthma symptoms. However, giving the claimant the benefit of a

doubt concerning, the severity of his symptoms, environmental limitations have been included in the above residual functional capacity to accommodate this allegation. In addition, the claimant's allegation of debilitating headaches is not supported by the medical evidence of record.

As for the claimant's mental allegations, the claimant underwent a consultative psychological evaluation by Dr. Janet Humphreys that revealed the claimant had a depressed mood with congruent affect. Dr. Humphreys concluded that the claimant appeared capable of carrying out complex instructions with only mild impairment of concentration for numerical operations. Dr. Humphreys diagnosed a depressive disorder, an anxiety disorder and a pain disorder (Exhibit 7F).

The claimant was also evaluated by Dr. Jeff Gedney who determined that the claimant's physical incapacity is incongruent with the nature of his physical complaints and demonstrated behaviors.

Dr. Gedney stated that his extreme endorsement of unremitting body-wide pain; reported extreme dysfunction and personality assessment profile suggest that he is either attempting to substantiate his disabilities through over endorsement or is attempting to demonstrate his extreme distress. Dr. Gedney further noted that the claimant was intelligent and resourceful individual who has been successful in securing and maintaining community-based social services to meet his needs as well as previously securing employment through his own efforts (Exhibit 15F).

As for the opinion evidence, the undersigned affords some weight to the opinion of consultative examiners Dr. Humphrey [sic] and Dr. Gedney. They had the opportunity to observe the claimant and make a determination based on their observations. Dr. Humphrey [sic] stated that the claimant is capable of following complex instructions in his thought process was logical and goal oriented, he continued to maintain good judgment and he was capable of performing work related activities with minimal limitations. This determination is consistent with the undersigned observations of the claimant and his testimony presented at the hearing. Regarding Dr. Gedney's assessment that the claimant is intelligent and a resourceful individual is consistent with the claimant's testimony and the medical evidence of record. As for Dr. Gedney's assessment that the claimant is overstating the severity of his symptoms, the undersigned agrees.

As for his opinion of State agency medical consultant Dr. Krishnamurthy, the undersigned affords his opinion some weight. Dr. Krishnamurthy determined that the claimant was capable of performing light work. Although this determination is reasonable and consistent with the medical evidence of record, subsequent medical evidence including a CT scan of the cervical spine dated May 10, 2010, documents that the claimant is more limited than originally thought (Exhibit 25).

As for the opinion of Dr. Campbell, the undersigned affords it great weight.

Dr. Campbell initially evaluated the claimant in 2007, at Shands Eastside
Community Practice.  He continued to treat the claimant through 2009.  He had
the opportunity to observe the claimant on an ongoing and regular basis.
Dr. Campbell stated that the claimant had a history of bulging disks and arthritic
changes that were not sufficiently severe to require surgery; this assessment is
consistent with his treatment notes the objective medical findings including
x ray's and CT scans (Exhibits 2F, and 17F).

R. 23-26.

### B.  Dennis M. O'Connor (Vocational Expert)

Mr. O'Connor testified, without objection, as an impartial vocational expert.

R. 18, 79-96.  Mr. O'Connor was familiar with Plaintiff's past relevant work and opined

that Plaintiff could not perform any of his past relevant work.  R. 79-84.  The ALJ asked

Mr. O'Connor a series of hypothetical questions and whether jobs existed in the national

economy for an individual with Plaintiff's vocational profile.  R. 79-95.  When considered

in the aggregate, Mr. O'Connor testified that a hypothetical individual with Plaintiff's

vocational profile could perform a significant number of jobs in the national economy if

he was limited to sedentary work[3] with the following limitations: a sit/stand option, sitting

for 45 minutes, standing for 30 minutes, and then sitting again; frequent pushing and

pulling with his upper and lower extremities; occasional climbing, balancing, stooping,

kneeling, crouching, and crawling; occasional reaching in all directions with his right

upper extremity; no overhead use of his right upper extremity[4]; no concentrated

exposure to fumes, odors, dust, gasses, poor ventilation, or hazards; simple, routine

---

[3]  Sedentary work involves, in part, lifting carrying no more than 10 pounds at the
time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools.  20 C.F.R. §§ 404.1567(a), 416.967(a).

[4]  The ALJ's RFC finding stated that Plaintiff was limited to occasional overhead
use of his right upper extremity instead of a limitation to no overhead use of his right
extremity as presented to Mr. O'Connor.  R. 22, 94.  The limitation provided to
Mr. O'Connor was more restrictive than the ALJ's ultimate finding and Mr. O'Connor
identified jobs that Plaintiff could perform with this more restrictive limitation.

repetitive tasks; work where he may distract others at times but able to maintain

adequate work relationships; work with a more variable output than an average

employee number: and no work with the general public or in close proximity to others.

R. 84, 94.  Mr. O'Connor opined that an individual with the above RFC[5] could perform

work as a nut sorter and dowel inspector.  R. 94-95; *see* R. 27.

## V. Legal Analysis

### A.  Plaintiff's Credibility

Plaintiff argues the ALJ improperly discounted the credibility of Plaintiff's

subjective complaints (as to "chronicitiy and severity") of pain because the complaints

are supported by the objective medical evidence.  Doc. 16 at 28-32.  The ALJ, however,

considered the relevant medical evidence in light of Plaintiff's complaints and did not err

in discounting Plaintiff's credibility.  R. 22-26.  The ALJ explained that although it was

reasonable to conclude that Plaintiff had some pain and limitations due to the effects of

his impairments, the evidence as a whole did not substantiate a reasonable medical

basis for the type and degree of debilitating pain described by Plaintiff.  R. 25.

Substantial evidence supports the ALJ's credibility findings.

Pain is subjectively experienced by the claimant, but that does not mean that

only a mental health professional may express an opinion as to the effects of pain.

-------------------

[5]  RFC is the most an individual can still do despite the functional limitations and restrictions caused by his medically determinable physical or mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-9p.  It is an assessment based upon all relevant evidence including the claimant's description of limitations, observations of examining physicians or other persons, and medical records. *Id.*  The responsibility for determining the claimant's RFC lies with the ALJ.  20 C.F.R. §§ 404.1546(c), 416.946(c).

To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  Wilson, 284 F.3d at 1225. This is guidance for the way the ALJ is to evaluate the claimant's subjective pain testimony because it is the medical model, a template for a treating physician's evaluation of the patient's experience of pain.  A clearly articulated credibility finding supported by substantial evidence will not be disturbed.  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

To analyze a claimant subjective complaints, the ALJ considers the entire record, including the medical records; third-party and Plaintiff's statements; the claimant's daily activities; the duration, frequency, intensity of pain or other subjective complaint; the dosage, effectiveness, and side effects of medication; precipitating or aggravating factors; and functional restrictions.  *See* 20 C.F.R §§ 404.1529; 416.929 (explaining how symptoms and pain are evaluated); 404.1545(e); 416.945(e) (regarding RFC, total limiting effects).  The Eleventh Circuit has stated that "credibility determinations are the province of the ALJ."  Moore, 405 F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.").

In this case, the ALJ concluded that Plaintiff had underlying medical impairments that could reasonably be expected to cause his alleged pain and other symptoms, but that Plaintiff's statements regarding the severity of his symptoms, including the intensity, persistence, and limiting effects of these symptoms were not supported by or consistent

with the evidence of record.  R. 25.  Consequently, the ALJ found Plaintiff's statements only partially credible.  R. 24-25.

In making this finding, the ALJ did not conclude that Plaintiff's statements were not fully credible because they conflicted with the RFC finding, as Plaintiff asserts.  Doc. 16 at 29.  Rather, the ALJ provided a detailed explanation with reference to specific evidence in the record, both medical and nonmedical, to explain the basis for her credibility finding.  R. 22-26.  In doing so, the ALJ discussed Plaintiff's medical history and the medical signs and laboratory findings regarding his low back and right upper extremity impairments, as well as his headaches and his somatoform pain disorder.  R. 23-26.  The ALJ also discussed the treatment sought by Plaintiff for his impairments and his reported activities of daily living.  R. 23-26.

The ALJ recognized that Plaintiff had bulging discs and arthritic changes in his lumbar and cervical spines, including an annular tear and fissure at the L5-S1 level, and that such conditions caused some radiculopathy affecting his lower and upper extremities.  R. 20, 23, 287-88, 312, 390-91, 431-33, 480-81.  The ALJ did not find, however, the evidence supportive of a finding that Plaintiff experienced debilitating pain "24/7," resulting in severe functional limitations, as he alleged.  R. 24, 51-52, 64-67, 71. For example, although Plaintiff claimed significant standing and walking limitations, his gait was often described as normal, or at most only mildly antalgic, and that Plaintiff sometimes walked with or without a cane.  R. 24, 283, 285, 296, 299-300, 310, 353, 435, 454-58, 466, 501, 547.  As the ALJ noted, on August 30, 2008, Dr. Adhami reported mostly normal physical findings during his consultative examination, including

normal muscle strength, normal gait, and full range of motion of all joints, including his right shoulder.  R. 23-24, 300-01.

Likewise, Dr. Depaz reported in July 2009 that Plaintiff had full range of motion and 5/5 motor strength of his upper and lower extremities, intact coordination, intact sensation, and a normal gait.  R. 466.  On August 25, 2009, Plaintiff returned to Dr. Depaz for a follow-up and electrodiagnostic studies.  R. 431-33.  Dr. Depaz noted, for the most part, normal impressions with a diagnosis of left L5 root dysfunction. R. 433.  Dr. Depaz noted: "In today's study, there is electrophysiological evidence of possible left L5 root dysfunction.  This is evident by the prolongation of the left common peroneal nerve F-wave by 2mls when compared to the right.  No evidence of axonal involvement with normal EMG of the left lower extremity and associated paraspinal muscles.  No evidence of peripheral sensorimotor neuropathy.  No evidence of S1 involvement."  R. 433.

Although Dr. Depaz noted that Plaintiff had some abnormalities in September 2009, he emphasized to Plaintiff that his condition was amenable to treatment and that he should follow through with the treatment plan, including going to physical therapy. R.487.  In November 2009 and March 2010, Dr. Depaz noted that although Plaintiff gait was antalgic, it was only mildly antalgic.  R. 455, 457.  Although Dr. Depaz prescribed a cane for Plaintiff, he noted that he provided the prescription at Plaintiff's request. R. 455, 457, 488; *see* R. 547-48 (9/7/2010, examination-Plaintiff is alert and in no acute distress; restricted range of motion; Plaintiff walks with a cane; persistent tenderness over cervical and thoracolumbar spine; decreased sensory in the right L5 distribution;

motor strength showed no focal weakness; and reflexes were 1+ at the knees and traces at the ankles bilaterally).

The ALJ also noted that Dr. Campbell, who was aware of Plaintiff's complaints and his medical history, stated on June 8, 2009, that "nothing was noted to require surgical decompression." R. 430. Dr. Campbell noted that Plaintiff would benefit seeing a pain management provider to assist with his pain control. In Dr. Campbell's last examination in January 2010, Dr. Campbell reported that Plaintiff had no neurological deficits, his sensation and strength were intact, and his gait normal. R. 502. Dr. Campbell also described Plaintiff's headaches as likely tension-related due to stress. R. 502.

Dr. Arulselvam similarly reported on April 28, 2010, that although Plaintiff walked with a cane and a slow gait, was positive for back pain, and had limited range of motion of his right shoulder, the other results of his examination, including his neurological and psychiatric findings, were normal. R. 501. A month later in May 2010, Dr. Arulselvam's associate reported that a review of Plaintiff's musculoskeletal system was positive for myalgias, back pain, arthralgias and gait problem; and negative for joint swelling. A review of Plaintiff's neurological and psychiatric/behavioral systems was negative. The physical examination indicated that Plaintiff was in no distress, had normal range of motion, exhibited no edema and tenderness during the musculoskeletal examination; and had a normal neurological and psychiatric examination. R. 498-99. On August 31, 2010, Plaintiff's objective examination indicated that Plaintiff had limited range of motion in the spine with pain and an anxious affect. Plaintiff exhibited no edema. A review of

systems was positive for back pain; positive for numbness but negative for dizziness (neurological); and positive for sleep disturbance.  R. 496-97.

    In evaluating Plaintiff's credibility, the ALJ also appropriately referred to his daily activities.  R. 25; *see* 20 C.F.R. § 404.1529(c)(3)(i), 416.929(c)(3)(i) (providing that daily activities are relevant and can be considered by the ALJ when evaluating a claimant's symptoms).[6]  Plaintiff lived alone in a house, was able to do some cooking, did some light housekeeping, went shopping with the assistance of friends, and took a bus when he needed to get somewhere.  R. 54, 57, 69-70, 193-94, 289, 352-53, 379, 382.  He also had friends who visited him and he went to church up to six times a month for Sunday services and Bible study.  R. 57, 68, 352.  Moreover, Plaintiff, who was on supervised probation from October 2008 to October 2009, reported that he typically spent his day looking for jobs.  R. 55-56, 72-73, 352, 382.  He availed himself of vocational resources and agencies, such as Florida Works, applied for jobs online, and attended computer classes.  R. 55-56, 72-73, 250-53, 270-74, 352, 532-42.  Such daily activities militated against a finding that Plaintiff did not have the physical or mental ability to perform the range of work found by the ALJ.  The fact that Plaintiff was not hired because of his past or because he had a problem "with stress and smoked marijuana," does not mean that he was disabled.  R. 382, 454, 532; *see* 20 C.F.R. §§ 404.1566(c), 416.966(c) (claimant's inability to get work is not basis for finding him disabled when his RFC and vocational profile make it possible for him to do work which exists in national economy).

_____

    [6]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).  *But see* Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

The ALJ, nevertheless, did not find Plaintiff without any pain or limitation. The ALJ accounted for Plaintiff's physical impairments and the above findings by restricting him to sedentary work with a sit/stand option with limited pushing and pulling with his upper extremities, no more than occasional balancing, stooping, kneeling, crouching, and crawling, and limited reaching in all directions, including no more than occasional overhead use of his right upper extremity. R. 22. The ALJ also found that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. R. 22. The ALJ's RFC finding took into account not only Plaintiff's back impairment with radiculopathy, but also took into account his right shoulder pain and the problems he allegedly had with reaching while using his non-dominant right upper extremity. R. 51, 55, 66-68, 300-01, 314, 451, 463-64, 466, 496, 501.

The ALJ's RFC finding also took into account Plaintiff's testimony that he could not lift more than 10 pounds and that he could not sit, stand, or walk for prolonged periods. R. 22, 51-52, 56, 63-65. In addition, the RFC finding took into account Plaintiff's asthma condition, which was being maintained on medication, and his alleged postural limitations testified to at the hearing. R. 22, 52, 65-66. The ALJ gave Plaintiff the benefit of the doubt with regard to many of the limitations in the RFC finding, including finding Plaintiff limited to sedentary work, contrary the opinion of Dr. Krishnamurthy, the State agency medical consultant. R. 25-26, 404, 408. Thus, the ALJ reasonably accounted for Plaintiff's subjective complaints of pain and other symptoms as they pertained to his physical impairments.

The ALJ also appropriately considered Plaintiff's mental impairments, noting that although he had depression, anxiety, and a somatoform pain disorder, any alleged

limitations from these impairments was not so significant that he could not perform any

work activity.  R. 22, 25-26.  The treatment that Plaintiff received for his mental

impairments was minimal.  R. 61, 76, 468-73, 508-21.  To the extent that Plaintiff

claimed that pain affected his ability to focus and concentrate, R. 68, 71, 352, 382-83,

the ALJ accounted for this by limiting Plaintiff to routine tasks and by adding the further

limitation that Plaintiff's work output may be more variable than the average employee.

R. 22.  The ALJ also accounted for Plaintiff's alleged social limitations by finding him

capable of maintaining adequate work relations, but that he could distract others at

times and should not work with the general public or in close proximity to others.  R. 22,

352, 382-83.

    The above mental limitations were consistent with the evaluation of

Dr. Humphreys, who opined on October 6, 2008, that Plaintiff's memory appeared in

tact and he was capable of carrying out complex instructions with some mild impairment

of concentration for numerical operations and that he had some limited social skills and

judgment that would be affected by his depression.  R. 354.[7]  These mental limitations

were also consistent with the opinion of Dr. Gedney, who on October 23, 2008,

described Plaintiff as an intelligent and resourceful individual, who had been successful

---

[7] On October 10, 2008, Gary Buffone, Ph.D., completed a Psychiatric Technique
Review (PRT) and concluded that Plaintiff had mild degrees of functional limitations.
R. 367.  On April 29, 2009, Steven Wise, Psy.D., completed a Mental Residual
Functional Capacity Assessment and concluded that Plaintiff retained the mental
capacity to perform routine tasks and maintain adequate work relations for goal directed
activity.  Dr. Wise added that Plaintiff may distract others at times and his output may be
more variable than the average employees.  Plaintiff was "okay" for routine tasks and
relations.  R. 427.  Dr. Wise also completed a PRT and concluded that Plaintiff had mild
restrictions in activities of daily living, moderate difficulties in maintaining social
functioning and in maintaining concentration, persistence or pace, and no episodes of
decompensation.  R. 421.

in securing and maintaining community-based social services, despite his "*perceived*"
physical pain.  R. 384.

Additionally, the ALJ appropriately referred to Dr. Gedney's psychosocial
evaluation, where he reported that Plaintiff's complaints of unremitting body pain and
pain-related limitations were not congruent with his physical signs or symptoms, which
suggested the possibility of secondary gain issues.  R. 25-26, 379, 383.  As Dr. Gedney
noted, Plaintiff's vocal complaints of pain and discomfort increased with focused
discussion on his various ailments.  R. 379.  Further, the results of Plaintiff's personality
assessment questionnaire could not be validated because of Plaintiff's over
endorsement of symptoms.  R. 379, 383.  The observations by Dr. Gedney supported
the ALJ's overall finding that Plaintiff's alleged physical pain and symptoms were not as
debilitating as he alleged.

The ALJ appropriately made her credibility finding based on a review of the
whole record and specifically accounted for Plaintiff's alleged pain and other symptoms
to the extent that they were reasonably consistent with his medical signs and laboratory
findings, and other evidence of record.  Based on the ALJ's conclusions,
Mr. O'Connor opined that an individual with Plaintiff's particular functional limitations, as
found by the ALJ, was capable of performing a significant number of jobs in the national
economy, which supported the ALJ's ultimate finding that Plaintiff was not disabled.
R. 84, 94-95.  In sum, the ALJ's decision is supported by substantial evidence.

Plaintiff argues that there is substantial evidence that detracts from and supports
his claim of disability.  Plaintiff, however, is requesting this Court to re-weigh the
evidence and substitute its discretion for that of the ALJ.  Bloodsworth, 703 F.2d at

1239.  As stated above, the role of a reviewing court under 42 U.S.C. § 405(g) is limited to determining whether there is substantial evidence in the record as a whole to support the decision.   As long as the ALJ's decision is supported by substantial evidence and based upon correct application of the law, as it is in this case, it is entitled to deference and should be upheld.

## VI.  Conclusion

Considering the Record as a whole, the findings of the ALJ are based upon substantial evidence and the ALJ correctly applied the law.  Accordingly, the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits is **AFFIRMED**.  The Clerk is **DIRECTED** to enter judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on June 11, 2013.

s/ **Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**